Mr. Justice Story
delivered the opinion of the Court.
The two.hundred chests of tea. in controversy in this suit, were imported into the city of New-York, in the ship Ontario, from China, and entered there at the custom house, and the duties regularly secured as bohea teas. They were after-wards transported coastwise to Boston ; and upon examination there, under the direction of the collector of the district, they were seized as forfeited, under the collection act of the 2d of March, 1799, ch. 128. s. 67. on account of their differing in de *436 scription from the contents of the entry. The libel states the facts specially, but contains no allegation of an intention to defraud the revenue. Upon this state of the case, the libel is assailed for a supposed defect, arising from the absence of such an allegation. But we think this objection cannot be sustained. The libel follows the language of the enacting clause of the act, which inflicts the forfeiture ; and the. exemption from forfeiture, when the collector or the Court shall be satisfied that the difference between the entry and the packages “ proceeded from accident or mistake, and not from an intention to defraud the revenue,” being found in a separate proviso, is properly matter of defence, to be asserted and proved by the claimant, and is not, according to the course of adjudications in this Court, essential to the structure of the libel itself. This objection, then, may be dismissed without further observation.
Another question, of more serious importance, is, whether the examination and seizure authorized by the 67th section of the act, are not limited to the collector of the district wheré the goods were originally entered and the duties secured, upon importation; and so the.case made by the libel is not within the purview of the act, whatever might be the authority of the collector to seize for forfeitures generally, and to assert the claim in a Bbél, properly framed for such a purpose. The decision of this question would require a very minute and critical examination of the whole revenue and coasting acts; and as the Court- can satisfac *437 torily dispose of the cause upon the merits, in point of fact, it is deemed unnecessary to institute so laborious an inquiry.
The claim admits, that the teas were imported and entered as bohea teas; and asserts, that they are of the kind and. denomination called bohea teas, and not of a different kind or quality of teas; and this forms the main point in controversy between the parties. One. of the earliest acts of Congress, (the act of the 20th of July, 1789, ch.2.) imposes duties on teas in the following.words: “On bohea tea, per pound, six cents; on all sou-chong or other black teas, per pound, ten cents ; on all hyson teas, per pound, twenty cents; on all other green teas, per pound, twelve cents.” The act of the 10th of August, 1790, ch. 39. varied the duties, but retained the same descriptions. The act of the 29th of January, 1795, ch. 82. declared that “ teas commonly called imperial, gunpowder, or gomee,” should “ pay the same duties, as hyson teas.” The act of the 3d of March, 1797, ch. 64. laid an additional duty of two-cents “ upon all bo-bea tea.’’ And the act of thé 27th of April, 1816, ch. 107. under which this cargo Was imported, le-' vies duties on “bohea, twelve cents per pound ; souchong and other black, twenty-fiye cents pei pound; imperial, gunpowder, and gomee, fifty cents per pound ; hyson, and young hyson, forty cents per pound; hyson skin, and other green, twenty-eight cents per pound.” The legislation of pongress here detailed, exhibits a progressive discrimination’in. the kinds of green teas, but leaves *438 the black teas with no other specific discrimination ^at bohea and souchong.
The argument on behalf of the United States, is, that the two hundred chests of tea, now in controversy, are in reality simple congo tea, and not bohea ; that the latter is a pure unmixed tea, entirely distinct from congo, and known in China by an appropriate name; that it is to this pure and unmixed bohea tea, that the successive acts of Congress refer, and not to any other mixed tea, though known by the common denomination of bohea. If we were to advert to scientific classifications, for our guide on the present occasion, it is most manifest, from the works cited at the bar, that bohea is a generic term, including under it all the black teas, and not merely a term indicating a specific kind. But it ippears to us unnecessary to enter upon thisinqif y, because, in our opinion, Congress must be understood to use the word in its known, commercial sense. The object of the . duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. Whether a particular article were designated by one name or another, in the country of its origin, or whether it were a simple or mixed substance, was of no importance in the view of the Legislature. It did not suppose our merchants to be naturalists, or geologists, or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic. And it would have been as dangerous as useless, to attempt any other *439 classification, than that derived from the actual business of human life. Bohea tea, then, in the sense of all our revenue laws, means that article which, in the known usage of trade, has acquired that distinctive appellation. And even if the article has undergone some variations in quality, or mixture, during the intermediate period from 1789 to 1816, when the last act passed, but still retains its old name, it must be presumed that Congress, iri this last act, referred itself to the existing standard, and not to any scientific or antiquated standard.
The true inquiry, therefore, is, whether, in a commercial sense, the tea in question is known, and bought, and sold, and used, under the denomination of bohea tea. We think the evidence on this point is altogether irresistible. It establishes that the bohea tea of commerce is not usually a distinct and simple substance, but is a compound made up in.China of various kinds of the lowest priced black teas, and the mixture is of higher or lower quality, according to the existing state of the market. Indeed} from the uniformity of its price in the midst of great fluctuations in. the prices of all other teas, it seems rather to indicate the lowest quality of black teas, than any uniform compound. It is accordingly in proof, that old congo teas are often sold as bohea, and have sometimes been imported into our market under that-denomination. In short, whenever black teas are deteriorated by age, or are of the lowest price, they are mixed up to form bohea for the market, and are suited to the demand and wishes of the *440 purchasers. It is not meant to affirm that there is no such simple and distinct tea known as bohea. All that the evidence justifies us in saying is, that this is not the common bohea of commerce. The latter may or may not be a simple substance, according to circumstances. The generic name bohea, comprehending under it all the. varieties of black teas, whenever they are at the cheapest price in the market, or are of a very .inferior quality, or are mixed up for sale, they lose their specific names, and sink, in to the common denomination.
Such is the conclusion which, in the opinion of the Court, the evidence in this record justifies and requires. It is true, that the Boston witnesses very strongly state that the present teas are pure unmixed congo; and their testimony is entitled'to very great consideration, from their personal respectability as well as their- long experience. But the New-York witnesses speak with equal positiveness and point, that the present teas are the common bohea of the market, and have been bought and sold as such without hesitation. These witnesses, also, are entitled to entire credit, for the same reasons; they have had great experience, and are of unquestioned credibility. In this apparent conflict of competent and credible witnesses, the only way of reconciling the testimony, is to suppose that they do not speak ad idem; that the Boston witnesses speak to ,the specific nature of the particular teas in controversy, and the New-York witnesses to their known commercial denomination in their actual state. In *441 this way of considering the testimony, the conflict exhibits more a matter of apparent than real diversity of opinion. But if it be not thus reconcilable, it appears to us that the weight of the evidence is so strong, that teas of this description have been long imported into our market as bohea, that no Court of justice would feel itself authorized to inflict the forfeiture under the statute, upon a presumed intentional violation of its provisions. There is, indeed, something that applies still more forcibly to the claimant, under thesé circumstances, than applies in common cases. He came into the tea trade since the peace of 1815, and has been most extensively engaged in it. At the time pf his first commercial enterprise, teas of this description were publicly and commonly imported into New-York as bohea, and had acquired a known commercial character. He acted upon this settled usage; and if the present seizure can bé sustained, he is to suffer for a forfeiture, which he had ño adequate means to avoid, and could not have foreseen.
Then; as to the intention of fraud. It is said that these, teas were imported in congo chests, covered with a thin paper, for the-purposes of disguise, and that, upon inspection, it is clear that the original congo still rémained in the chests. The circumstance that .these are congo. chests, whose structure is perfectly known, would not justify the conclusion that there was an intention to defraud the revenue, since that structure might attract observation, and thus lead to immediate *442 detection. It would have been more natural to have, disguised congo teas in bohea boxes. But the • difficulty that lies hi the argument derived from this source, is, that upon opening the chests, the contents are proved to be exactly what the Néw-York witnesses call bohea, and the Boston witnesses congo. So that the question of fraudulent disguise depends upon the, fact, whether the tea be of be not bóhéa; and if it be settled to be the latter, then the suspicion from this circumstance. vanishes. The samé answer ihay be given to all the other circumstances relied on as badges Of fraud. They-become utterly unimportant, if there, was not'areal misrepresentation of the quality»? the. tea;
There is one cogent fact/ which presses with peculiar Weight in the consideration of. this part of the case. It is, that after the present seizure was made, and the whole train of suspicions disclosed, the remaining teas* of the same denomination and. importation, which were yet in the public stores • at New-York, underwent a strict examination théré under the authority of the officers of the customs* The result of that examination was an unequivocal opinion, that they were, the common bohea of commerce; and this result being communicated .to the government, no farther proceedings were thought necessary to vindicate its rights.
;But another fact, which is decisive against the Supposition of a fraudulent intention, is, that the teas were purchased in China as bohea, at the usual bohea price, and upon their importation into *443 New-York, were there sold at the usual bohea price. They were sold at prices from thirty-one to thirty-six and a half cents per pound, when, at the same time, and in the same place, congo sold at forty-eight cents per pound. This is not a matter of doubtful or equivocal evidence ; it is admitted and proved in the most positive manner.' What then could have been the inducement to fraud? Men do not. perpetrate frauds upon the revenue from the mere love of mischief, or the wanton disregards duty. There must be some leading interest, some enticing object in view,,to lead them to such a violation of social law and moral sentiment. In the present case, no such motive could exist, for tjie whole conduct of the party is at war with, the supposition. Nay, more, the perpetration of the fraud would have been against his interest. We do not here allude to his private reputation as an opulent merchant, engaged in an extensive commerce in teas, nor to the powerful influence that, under such circumstances, public opinion must have upon him, in its stern and severe, though silent rebukes. But his immediate interest in the same trade and in the same voyage, would .be sacrificed by such unworthy proceedings'. He would hazard large interests-upon a paltry saving in duties, from which he could in the end derive not the slightest benefit.
It has been said, that unless the present libel can be maintained, a wide door will be opened for the admission of frauds in the importation of teas. If this be true, it forms no reason for a different judicial construction of the acts of Con *444 gres, much less for- the enforcing a forfeiture where the' facts will not warrant it. Congress can provide an easy remedy,’ by .changing the specific duty to. a duty ad valorem, a policy which has already obtained the sanction of other nations.
* It is unnecessary to go farther into the discussion of the merits of this case. The judgment of the Court ife, that the decree of the Circuit Coiirt of Massachusetts, given pro forma, ought to be reversed, the libel of the United States be dismissed, and the 200 chests of tea be restored to the claimant. But the Court are also of opinion that there was probable cause of seizure, and divert it to be certified .upon the record.
Decree reversed.