MARY McCOY, ADMINISTRATRIX, *v.* THE CINCINNATI, HAMILTON AND DAYTON RAILROAD COMPANY.*

Where a member of a wrecking crew, who has had long experience in that work, takes his seat in a dangerous place on a train about to proceed rapidly to a wreck, and is knocked off and killed through the negligent placing of a stick of timber upon the car, he is chargeable with notice of the danger of his position and of the manner in which the car was loaded, and the

* Affirming action of the trial judge Hosea in granting motion for nonsuit.

trial court is warranted in taking the suit of his administrator from the jury on the ground of contributory negligence.

FERRIS, J.; HOFFHEIMER, J., and CALDWELL, J., concur.

This action is brought to reverse the proceedings of the court in withdrawing the cause from the jury and rendering a judgment for the defendant. Numerous grounds are alleged for error, but the determination of what we regard as the principal question will serve to indicate the view of this court with reference to all of the various assignments of error as contained in the petition.

The plaintiff was the duly appointed administratrix of the estate of Patrick McCoy, who met his death on the 26th day of December, 1901, while engaged in the service of the defendant railroad company as a servant, employed under the direction of a foreman or wrecking master, whose duties required him to assist in the work of clearing the tracks in cases of wreck. The petition states that while so engaged as a workman, riding upon a wrecking train, he was by reason of the negligence of the defendant struck and knocked from said train, and met his death by reason of the negligent running and operation of said train; and by reason of the negligent manner in which a beam or pole was placed on said car, that it was caused to get out of place, and to project over and beyond the sides of the car, so that it came in contact with other cars on the adjoining track of the defendant company, and by reason thereof came in contact with said cars and, swinging around, struck the decedent, knocking him from the car, and causing him to fall to the ground, and under the cars, whereby he met his death. And it was charged in the petition that the beam or pole on said car was in a dangerous and unsafe condition; that it was carelessly placed in such a position as to become dangerous, and that the decedent did not know of its condition; and that the defendant could have known the situation by the exercise of ordinary care.

The petition stated a good cause of action. The essential material facts being traversed by the defendant, the case came on for trial, and the plaintiff, to maintain the issue

on her part, introduced certain witnesses, whose testimony had a tendency to prove the substantial facts alleged in the petition.

The evidence submitted to the jury showed that the decedent at the time of his death was a man experienced in railroad matters, called at the noonday hour, suddenly to proceed upon the wrecking train to Wyoming, a point along the line of the road where a wreck had occurred. McCoy, the decedent, took a position upon a flat or derrick car. The wrecking train consisted of a flat car, spoken of in the record as a "derrick car," upon which was carried a derrick and an extra set of trucks, some large blocks on the east side of the car, and two poles on the west or left-hand side of the car supported by two upright posts or standards on the edge of the car. The second car was a flat car, built like a box car, for carrying blocks used in wrecking, and is known as the "block car." A third car, called a "closed tool car," was provided, with steps and platforms at each end, and was partly used for carrying tools; was fitted up with a stove, and was provided with benches and cushions on the side for the comfort of the men, and was where the members of the wrecking crew usually rode (page 75 of the record).

On the date of the accident, the derrick car was loaded, having the push pole and the lever on the side of the car, with two stakes to hold them in place. All the members of the crew rode in or on the tool car, except McCoy, the decedent, who boarded the derrick car, and sat on the flange or tread of one of the wheels of the truck, located in the derrick car on the west or left-hand side of the car, with his feet to the side of the car (pages 36, 37, 38 and 50 of the record).

The record discloses also that three boys, aged about nineteen years, who were trespassers, also boarded the derrick car for a ride to the wreck. The testimony shows that they were seated facing the rear of the train on the axle attached to the wheel upon which McCoy was sitting. The train ran at a speed of probably twenty-five miles an hour, until it reached a point in Fairmount, when the only witness,

John Quigly, one of the boys who was sitting on the axle, saw a beam or pole come through the air from the side of the car where McCoy sat, striking the two boys sitting with him. That witness did not see McCoy struck, nor did he see him fall from the car, but on looking up after straightening the pole, saw that McCoy was not on the car (pages 39, 52 and 53 of the record). The two boys were found after the train had been brought to a stop, lying back on the bolster of the truck, and McCoy was found "with his head next to the rail of the track upon which the train was running, and his feet lying towards the track on the west" (page 44 of the record). From the position that McCoy occupied upon the tread or flange of the wheel, the pole referred to as the "push pole" on that side of the car, would be directly under his feet (page 90 of the record). And the record (pages 61 to 70) indicates that McCoy must have had his feet placed upon the pole, or that his feet were drawn up under him, resting on the axle box of the wheel.

The court below, finding that such facts failed to make a *prima facie* case in support of the allegations of negligence as contained in the petition, withdrew the matter from the consideration of the jury, and entered a verdict for the defendant, and, in so doing, the plaintiff alleges there was error that justifies the reviewing court in reversing the judgment.

That negligence is a mixed question of law and fact is not to be questioned. Nor is there any doubt that it becomes the duty of the court when the testimony of the plaintiff established contribution to the cause that produced the injury, it would be reversible error for the court to refuse to grant a motion of the character made in this case. It becomes necessary, therefore, to ascertain from the record whether the plaintiff, upon whom the burden of proof rested, had shown negligence on the part of the defendant and had shown himself free from fault. In accepting a position as a member of the wrecking crew, the plaintiff assumed the risks only that were ordinarily incident to his duties as a member of such crew; he did not assume any risk growing out of the improper operation of the train, or from improper

placing of any of the materials on the car, if the testimony should show that he was in no way concerned with the situation that produced the injury. This would not be so if the testimony would tend to establish the fact that he himself had placed the pole, which was alleged to have been the proximate cause of the injury, in a situation where, by the exercise of ordinary care, it would have remained stationary; for as between the master and servant, in a case of this character, the master would not be held responsible for the act of a servant who, in the performance of a duty, is charged with the exercise of care that would have prevented the happening of the injury. The risk which a servant under these circumstances assumes does not excuse the master from the exercise of ordinary care in the management of the train for the purposes had in view in the organization of the crew of which the decedent was a member. It could safely therefore be presumed that when the decedent accepted employment as a member of the wrecking crew, and having had experience as such, he became charged with the knowledge of the fact that the train would be operated in such a manner as to arrive at the place where the wreck occurred, at the earliest possible moment consistent with safety; and if, therefore, the accident was the result of the rapid movement of the train thus going, no recovery could be had. The decedent could not voluntarily assume a position of greater hazard, where there was a greater liability of being jostled off the car, and recover from the master as the result of a situation caused by his own carelessness. He must have been in the exercise of ordinary care at the time of the accident, and the burden of establishing this fact was upon the plaintiff. The court found, as a matter of law, that the plaintiff, having voluntarily chosen a position different from that assigned to members of the wrecking crew while in transit, and having taken a position upon the car not justified by any one charged with the duty of exercising ordinary care, was in law guilty of negligence, and therefore there was no case for the jury.

As bearing upon the situation developed by the testimony, it will be profitable to examine the authorities wherein the

courts have determined when negligence is a matter of law, and when it is a question of fact for the jury. It would be admitted that a railway company is bound to use ordinary care, diligence and skill for the purpose of protecting its servants from encountering unnecessary risks, but it is not bound to use any higher degree of care for this purpose (Shearman and Redfield on Negligence, 189). And ordinary care has been defined under such circumstances as are presented by the facts in the case at bar to mean such care as takes into consideration all of the exigencies of the particular service in which the parties engaged (24 Fed. Rep., 124).

The doctrine is well settled that a master employing servants for a dangerous business is bound to prescribe rules sufficient for orderly and safe management, and to keep his servants informed of these rules; and it has been held that a servant's violation of such rules known by him, or his acquiescence in their violation, amounts to contributory negligence, and no recovery can be had. This rule is adopted in the Knittal case, 33 O. S., 468. In such cases the courts have held that it was the duty of the employer to make suitable rules and regulations and bring them to the knowledge of the employes, and, when so done, the master's duty is terminated (Shearman & Redfield on Negligence, Secs. 202, 204). The servant from and after such time, failing to observe such reasonable rules and regulations, does so at his peril. If the testimony introduced discloses the fact that the injury was proximately due to the neglect of the servant, or a failure to obey orders, or by assuming a position of unusual hazard, he contributed to the injury, and therefore could not recover (9 U. S., 439; 62 N. Y., 251; 45 Iowa, 546). "On plain principles already fully stated, no recovery could be had against the master for injuries received * * * by a railroad servant from attempting to do his work in a method needlessly dangerous (Shearman & Redfield, Section 207-12; Ill. App., 639). The principle exempting masters from liability to servants for injuries caused by defective loading of cars, the facts of which were known to the servants or ought to have been known, is based upon the law of contributory negligence.

The case at bar presented to the trial judge a situation at the close of the testimony for plaintiff in which the servant was shown to have been experienced, had been connected with the business of the wrecking train for a long period of time, and therefore would be presumed to know "the conditions of the material, machinery or appliances, which he had a constant opportunity to inspect, and which his regular duties brought under his notice," and therefore was presumed to know the ordinary dangers and risks of the service (41 Ark., 542) ; and therefore knew or ought to have known that the caboose, prepared by the company as a suitable place for him to ride in safety, was the proper place for him to be located while the train was moving. And he should have known that sitting on the rim or tread of the wheel located on a derrick car, drawn rapidly, with his feet dangling down, was an improper place, involving hazard not incidentally connected with the service for which he was employed. The facts are not unlike those in 103 N. Y., 667; 113 Penn. St., 490; 59 Texas, 255.

If it be said that the proximate cause of this accident was the improper loading of the poles on the car, and that the injury was caused by the slipping of what is referred to in the testimony as the "push pole" so that it came in contact with the car on the adjoining track, and by reason thereof brushed the decedent from the car to his death, it would still be true that no recovery could be had, because of the defective manner of placing the pole in such a position, for "When circumstances make it the duty of the servant to inquire, it is contributory negligence on his part *not* to inquire. A servant is chargeable with actual notice of every fact which he would have known had he exercised ordinary care to keep himself informed as to matters concerning which it was his duty to inquire" (Shearman & Redfield, Sec. 217).

But assuming that the proximate cause as shown by the testimony is not to be found in facts relating to the push pole, how could the responsibility be placed upon the company, based upon clear facts taken from the record? The

rule laid down by Justice Brewer in 179 U. S., 658, would then apply:

"It is not sufficient for the employe to show that the employer *may* have been guilty of negligence; the evidence must point to the fact that *he was*. Where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half-dozen causes, and find that the negligence of the employer was the real cause, where there is no satisfactory foundation in the testimony for that conclusion."

We think the court was clearly right in placing the burden of proof upon the employe who sought to charge the employer with negligence, at the same time admitting the law to be that mere proof of the occurrence of an accident, does not discharge that burden. Nor do we believe that the doctrine of *res ipsa loquitur* is applicable to a cause of this character (132 Fed. Rep., 593). And we are also of the opinion that on the authority of 66 O. S., 509; 69 O. S., 142, that under the testimony the decedent assumed the risk incident to the service in which he was employed, and that having taken the position of unusual hazard in riding on the tread of the wheel, probably the most hazardous place on the car, he assumed thereby the risks incident to that perilous position, and therefore was not entitled to recover.

Our courts have left little room for reasonable doubt as to the duty of the court under the circumstances "where the testimony of the plaintiff raises a clear presumption of negligence on his part, which directly contributed to his injury, and where no testimony is offered by him tending to abut that presumption, it is the duty of the trial court to sustain a motion by the defendant made at the conclusion of the plaintiff's evidence, directing a verdict, and the refusal to sustain such motion is error" (69 O. S., 142). Judge Spear deciding that case, and quoting from the Elliott case, 28 O. S., 340, stated the rule to be that where the undisputed facts showed that by the exercise of ordinary care a party

might have avoided injury, he can not recover. And applying these rules to the testimony before the jury, we believe that the trial court, finding that there was no conflict of the evidence upon the essential facts, properly regarded it a question for the court.

We are of the opinion that this course was proper, and that the motion to arrest the case from the jury was fully justified by the record presented in this case.

*Galvin & Galvin,* for plaintiff.
*Maxwell & Ramsey,* contra.