# PATTON v. TEXAS AND PACIFIC RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 123. Argued December 6, 7, 1900. — Decided January 7, 1901.

The plaintiff, an employé of the railway company, was injured while at work for it. With reference to his contention that the trial court erred in directing a verdict for the defendant, and in failing to leave the question of negligence to the jury, this court, after stating the facts, said:

(1) That while in the case of a passenger, the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which, in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, a different rule obtains as to an employé. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish, that the employer has been guilty of negligence:

(2) That in the latter case it is not sufficient for the employé to show that the employer may have been guilty of negligence, but the evidence must point to the fact that he was; and where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause when there is no satisfactory foundation in the testimony for that conclusion:

(3) That while the employer is bound to provide a safe place and safe machinery in which and with which the employé is to work, and while this is a positive duty resting upon him, and one which he may not avoid by turning it over to some employé, it is also true that there is no guaranty by the employer that the place and machinery shall be absolutely safe. He is bound to take reasonable care and make reasonable effort, and the greater the risk which attends the work to be done and the machinery to be used, the more imperative is the obligation resting upon him.

The rule in respect to machinery, which is the same as that in respect to place, was accurately stated by Mr. Justice Lamar for this court in *Washington & Georgetown Railroad* v. *McDade*, 135 U. S. 554, 570.

PLAINTIFF in error, plaintiff below, brought his action against the defendant to recover for injuries sustained while in its em-

ploy as fireman. A judgment in his favor was reversed on April 10, 1894, by the Circuit Court of Appeals. 23 U. S. App. 319 ; 9 C. C. A. 487. On a second trial in the Circuit Court the judge directed a verdict for the defendant, upon which judgment was rendered. This judgment was affirmed by the Circuit Court of Appeals, 37 C. C. A. 56, and thereupon the case was brought here on error.

The facts were that plaintiff was a fireman on a passenger train of the defendant, running from El Paso to Toyah and return. Some three or four hours after one of those trips had been made and while the engine of which he was fireman was being moved in the railroad yards at El Paso, plaintiff attempted to step off the engine, and in doing so the step turned and he fell so far under the engine that the wheels passed over his right foot, crushing it so that amputation became necessary. Plaintiff alleged that the step turned because the nut which held it was not securely fastened ; that the omission to have it so fastened was negligence on the part of the company, for which it was liable.

*Mr. Frank W. Hackett* for plaintiff in error. *Mr. Millard Patterson* was on his brief.

*Mr. John F. Dillon* for defendant in error. *Mr. Winslow S. Pierce* and *Mr. David D. Duncan* were on his brief.

MR. JUSTICE BREWER delivered the opinion of the court.

The plaintiff's contention is that the trial court erred in directing a verdict for the defendant and in failing to leave the question of negligence to the jury.

That there are times when it is proper for a court to direct a verdict is clear. "It is well settled that the court may withdraw a case from them altogether and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in op-

position to it. *Phœnix Ins. Co.* v. *Doster,* 106 U. S. 30, 32; *Griggs* v. *Houston,* 104 U. S. 553; *Randall* v. *Baltimore & Ohio Railroad,* 109 U. S. 478, 482; *Anderson County Commissioners* v. *Beal,* 113 U. S. 227, 241; *Schofield* v. *Chicago & St. Paul Railway Co.,* 114 U. S. 615, 618;" *Delaware &c. Railroad* v. *Converse,* 139 U. S. 469, 472. See also *Aerkfetz* v. *Humphreys,* 145 U. S. 418; *Elliott* v. *Chicago, Milwaukee &c. Railway,* 150 U. S. 245.

It is undoubtedly true that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact, and that ordinarily negligence is so far a question of fact as to be properly submitted to and determined by them. *Richmond & Danville Railroad* v. *Powers,* 149 U. S. 43.

Hence it is that seldom an appellate court reverses the action of a trial court in declining to give a peremptory instruction for a verdict one way or the other. At the same time, the judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility. He has the same opportunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record, and when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by instructions to that effect, an appellate court will pay large respect to his judgment. And if such judgment is approved by the proper appellate court, this court, when called upon to review the proceedings of both courts, will rightfully be much influenced by their concurrent opinions.

While it would needlessly prolong this opinion to quote all the testimony, it is proper that its salient features should be noticed. The single negligence charged is in the failure to have the engine step securely fastened. That step, a shovel-shaped piece of iron, is firmly fixed to a rod of iron about an inch in diameter and eighteen inches in length, which passes up through the iron casting at the rear of the engine, about six or eight inches thick. A shoulder to this rod fits underneath the casting and the part

passing through above has threads on the upper end upon which a nut is screwed firmly down on the casting, fastening the rod so that it will not move.  That the step, rod and nut were in themselves all that could be required is not disputed.  That the nut was properly screwed on at El Paso, before the engine started on its trip, is shown; the plaintiff, who assisted there, testifying to the fact.  The engineer testified that he used the step both on the trip to Toyah and the return trip to El Paso and found it secure, and there is nothing to contradict this evidence. The engineer in his report of needed work both at Toyah and on his return at El Paso did not mention the step.  He certainly supposed it secure.  Competent inspectors were provided by the company both at El Paso and Toyah, and neither of them detected any failure in the secure fastening of the step by the nut.  All of the witnesses except the superintendent and foreman of defendant testified that if the nut had been securely fastened at El Paso it would not have worked loose in making the trip from El Paso to Toyah and return by the ordinary jar and running of the engine; that it might be loosened by the step striking something.  The superintendent and foreman testified from an experience of twenty years with engines that it might work loose on such trip, but that it was impossible to tell whether it would or not.

It was the duty of the fireman to clean the cab and all that portion of the engine above the running board, and to keep the oil cans and lubricators filled with oil.  It was not necessary for him to attend to this work until eight hours after the engine arrived at El Paso, though it was more convenient to do so while the engine was hot and the oil warm, as it would take less time than when the engine was cooled off.  After the engine reached El Paso the fireman and the engineer would get off and it would be taken charge of by the yardmen, who would detach it from the train, take it to the yard, coal and sand it and do all things necessary except the matter of repair, then place it in the round house where it would be cleaned by employés other than the fireman in all its parts beneath the running board, and inspected by the machinist and repaired; and after that the fireman would have ample time for all the duties

imposed upon him before the engine started on another trip. All this the plaintiff knew, and simply took the time he did for his work for his own convenience. On this particular day he did not commence work until three or four hours after the arrival of the train at El Paso. Prior to that time the engine had been coaled up, the coal being placed in the tender back of the engine. Some of the pieces of coal were from a foot to eighteen inches in length and from six to eight inches in width, and very heavy, and one of them falling off might strike the step. The engine had not at the time of the accident reached the round house for inspection and repair, and this the plaintiff knew.

From this outline it appears that the master provided perfectly suitable appliances, and appliances in good condition; that they were properly secured when the engine started on its trip, and that it is impossible to tell from the testimony how the step was loosened. It may have been from the ordinary working of the engine, the possibility of which was testified to by the superintendent, who had had long experience with engines. It may have been because the step struck something on its trip, which striking might produce that result according to the testimony of other experts who denied that the ordinary working of the engine would loosen it. We say this notwithstanding the testimony of the plaintiff that the step did not hit anything on the trip, for the step was on the right side of the engine, the side occupied by the engineer, and therefore a striking might have occurred without the knowledge of the plaintiff, whose work did not call him to that side of the engine. It may have resulted from the dropping on the step of some of the large lumps of coal which were thrown into the tender after reaching El Paso. We are not insensible of the matter to which the plaintiff calls especial attention, to wit, a conflict between the testimony given by Alexander Mitchell, the round house foreman at Toyah, at the first trial, and that given by him at the last. At the first trial he testified that the step was not taken off at Toyah. In the last that it was. He also testified that though taken off it was securely fastened before the train left. The inference, of course, sought to be drawn is that the testimony of this witness

is unreliable; that it is to be believed that he unscrewed the nut, but not to be believed that he screwed it up tightly, and therefore another possibility of the cause of the loosening of the step is introduced into this case. But giving full weight to this suggestion, it still appears that it is a mere matter of conjecture as to how the step became loose.

On the other hand, it must be remembered that the plaintiff, who knew that the engine was to be taken to the round house at El Paso and inspected and repaired before he was called upon to perform any duties upon it, for his own convenience, before such inspection and repair went on the engine and attempted to discharge his duties of cleaning, etc. If he, knowing that there was to be an inspection and repair and that he had ample time thereafter to do his work, preferred not to wait for such inspection and repair but to take the chances as to the condition of the engine, he ought not to hold the company responsible for a defect which would undoubtedly have been disclosed by the inspection and then repaired.

Upon these facts we make these observations: First. That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is *prima facie* a breach of his contract to carry safely, *Stokes* v. *Saltonstall,* 13 Pet. 181; *Railroad Company* v. *Pollard,* 22 Wall. 341; *Gleeson* v. *Virginia Midland Railroad,* 140 U. S. 435, 443, a different rule obtains as to an employé. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employé to establish that the employer has been guilty of negligence. *Texas & Pacific Railway* v. *Barrett,* 166 U. S. 617. Second. That in the latter case it is not sufficient for the employé to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the

jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employé is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs. Third. That while the employer is bound to provide a safe place and safe machinery in which and with which the employé is to work, and while this is a positive duty resting upon him and one which he may not avoid by turning it over to some employé, it is also true that there is no guaranty by the employer that place and machinery shall be absolutely safe. *Hough* v. *Railway Company*, 10 Otto, 213, 218; *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368, 386; *Baltimore & Potomac Railroad* v. *Mackey*, 157 U. S. 72, 87; *Texas & Pacific Railway* v. *Archibald*, 170 U. S. 665, 669. He is bound to take reasonable care and make reasonable effort, and the greater the risk which attends the work to be done and the machinery to be used, the more imperative is the obligation resting upon him. Reasonable care becomes then a demand of higher supremacy, and yet in all cases it is a question of the reasonableness of the care—reasonableness depending upon the danger attending the place or the machinery.

The rule in respect to machinery, which is the same as that in respect to place, was thus accurately stated by Mr. Justice Lamar, for this court, in *Washington & Georgetown Railroad* v. *McDade*, 135 U. S. 554, 570:

"Neither individuals nor corporations are bound, as employers, to insure the absolute safety of machinery or mechanical appliances which they provide for the use of their employés. Nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master

fails in this duty of precaution and care, he is responsible for any injury which may happen through a defect of machinery which was, or ought to have been, known to him, and was un-known to the employé or servant."

Tested by these rules we do not feel justified in disturbing the judgment approved as it was by the trial judge and the several judges of the Circuit Court of Appeals. Admittedly, the step, the rod, the nut, were suitable and in good condition. Admittedly, the inspectors at El Paso and Toyah were competent. Admittedly, when the engine started on its trip from El Paso the step was securely fastened, the plaintiff himself being a witness thereto. The engineer used it in safety up to the time of the engine's return to El Paso. The plaintiff was not there called upon to have anything to do with the engine until after it had been inspected and repaired. He chose, for his own convenience, to go upon the engine and do his work prior to such inspection. No one can say from the testimony how it happened that the step became loose. Under those circumstances it would be trifling with the rights of parties for a jury to find that the plaintiff had proved that the injury was caused by the negligence of the employer.

The judgment is

*Affirmed.*