## O'CONNELL v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

No. 1,122.

1. REVIEW ON APPEAL — MATTERS OF PRACTICE — DISCRETION IN PERMITTING CROSS-EXAMINATION.

    While conceding to the trial court wide discretion in the suspension or enforcement of the rule limiting cross-examination to matters testified to in chief, and in respect to the order in which evidence is introduced, an appellate court must reserve the right to grant a new trial, even for the relaxation of such rules of practice, when necessary, to prevent serious injury to the rights of a party.

2. EVIDENCE—CONDITION OF CAR—SUFFICIENCY OF IDENTIFICATION.

    A witness testified that in company with one R. he examined a certain numbered Erie car on the morning after plaintiff had been injured thereon, and described its condition. R. testified that he examined an Erie car with the previous witness, in the yards of defendant company, but did not remember its number. Held, that he sufficiently identified the car, in connection with the testimony of the previous witness, to render his testimony as to its condition admissible.

3. ACTION FOR INJURY TO SWITCHMAN—DEFECTIVE CAR—SUFFICIENCY OF EVIDENCE UNDER OHIO STATUTE.

    By the Ohio statute (Bates' Ann. St. § 3365–21) evidence of a defective appliance on a railroad car, and that an employé of the company was injured by reason of such defect, is made prima facie evidence of negligence on the part of the company. In an action by a switchman to recover for an injury caused by his falling while attempting to climb on a car in the night, he testified that in attempting to put his foot on the step or stirrup it struck the side, and slipped off, and that, from the way his "foot hit it, it was slanting way back." Witnesses who examined the car the next morning while standing in the yards testified that one of the steps was bent back under the sill. The car had been switched onto an intersecting track during the night, and the question whether the step on which plaintiff tried to place his foot was the one described by such witnesses, or the one on the opposite corner of the car, depended upon whether the car had been transferred over one or the other of two connecting tracks, upon which point there was no evidence, and on the conclusion of plaintiff's case a verdict was directed for defendant. Held, that the evidence was sufficient to require the submission of the case to the jury; that, in the absence of evidence from defendant to show over which track the car had been transferred,—which was a fact peculiarly within its knowledge,—the jury might reasonably infer that the step found defective the next morning was the one which plaintiff attempted to use.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

The plaintiff, while a switchman in the service of the Pennsylvania Railroad Company, sustained the loss of a leg. For this injury he brought this

suit, claiming that his foot slipped from a bent and damaged iron step at one end of a car he was climbing in discharge of his duties, and that his foot was thereby thrown on the rail in front of a revolving wheel and crushed. At the conclusion of the plaintiff's evidence, and before any evidence by the defendant, the court below instructed the jury to find for the railroad company.

Charles Koonce, Jr., for plaintiff in error.
Wm. C. Bayle, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, announced the opinion of the court.

Three errors are assigned: First. In the admission of evidence in chief for the defendant in cross-examination of the witness Forney, a witness introduced by the plaintiff for the sole purpose of proving the number of the car from which the plaintiff fell. Second. In the exclusion of the testimony of the witness Richards touching the identification and condition of the car from which plaintiff fell. Third. As to the action of the court in directing a verdict. These may be treated in the order stated.

1. The evidence tended to show that the plaintiff was a switchman employed in switching ore cars in a yard assigned to the National Steel Company at Youngstown, Ohio. At about 7 o'clock on the night of December 8, 1899, while attending to his duties, plaintiff opened a switch to admit a train of ore cars being pushed by an engine; the object being to transfer the cars from one part of the yard to another. After setting the switch for the main track, he gave the signal to the engineer to "come ahead." When the first car reached the point where he was standing, he attempted to climb on, by reaching out and grasping the handhold, and then springing so as to place his foot in the stirrup at what was the then forward and westward end of the car, the car being the first or front car as the train was then moving. Plaintiff testified that the train at the time was moving at a speed of not exceeding three miles per hour. The tracks at the locus in quo run east and west, and the train of cars was being pushed westwardly. Plaintiff was on the north side of the track. He testified, among other things, as follows:

"I had my lantern on my right arm; put my hand up for the handhold; got it all right, and sprang for the step; I just got a glimpse of it, and saw that there was a step there, and my foot slipped off,—hit the side of the step, and slipped off, and fell on the rail."

He further said that the step he undertook to place his foot in was on the corner of the car,—the northwest corner as the car then stood; that it was an iron step, bolted on the sill, and hung below the outer edge of the bottom of the car; and that such steps are a part of the ordinary equipment of freight cars. When asked as to the condition of the step and the circumstances of the accident, the plaintiff, among other things, said "that his foot hit the side of the step," "on the north side or on the west side; and, from the way my foot hit it, it, was slanting way back, the same as I would put my foot up, and felt as though it was slanting back towards the end sill of the car." For

the purpose of identifying the car from which he fell, plaintiff introduced one Elias Forney, a member of the switching crew, and asked Forney if he knew the number of the first car in the train which was being pushed up the track at the time he (O'Connell) sustained his injury, and to give any other marks or words by which it was distinguished. The witness answered that the number of the car was 47,923, and that it was an Erie car. The plaintiff then stopped, and turned the witness over to the other side for cross-examination. On cross-examination he stated that he discovered the number and description of the car at between 11 and 12 o'clock the night of O'Connell's injury, having first gone with O'Connell to the hospital. He said that the car had been shifted while he was gone, but that he got its number from the conductor's report, and then hunted it up, and saw it was an Erie car. In further cross-examination the following occurred:

"Q. Did you examine the northwest step of the car? A. Yes, sir. Q. Was that step bent back on the car you examined? A. No, sir. Q. What was the position of the step on car 47,923 when you saw it? A. The step was solid. Q. Straight down? A. Yes, sir; bolted on the side sill with bolts."

All this was objected to by the plaintiff in error as not legitimate cross-examination, but evidence in chief. It was, however, admitted, over objection, as proper cross-examination. This statement as to the condition of the step on the car examined by the witness was plainly evidence in chief. The witness should have been recalled if the defendant so desired, and thus made the witness of the defendant as to the condition of the step of the car he had identified by number and name as the car from which plaintiff fell. Montgomery v. Insurance Co., 97 Fed. 913, 38 C. C. A. 553, 557; Wills v. Russell, 100 U. S. 621, 625, 25 L. Ed. 607; Houghton v. Jones, 1 Wall. 702, 706, 17 L. Ed. 503. The cases cited above are all cases where the trial court had properly applied the rule limiting the cross-examination to the matters opened up by the examination in chief, and in Wills v. Russell the court calls attention to the fact "that the mode of conducting trials, and the order of introducing evidence, and the time when it is to be introduced, are matters properly belonging very largely to the practice of the court where the matters of fact are tried by a jury." "Cases," said the court, "not infrequently arise where the convenience of the witness, or the court, or the party producing the witness will be promoted by a relaxation of the rule to enable the witness to be discharged from further attendance; and if the court, in such a case, should refuse to enforce the rule, it clearly would not be ground of error, unless it appeared that it worked serious injury to the opposite party." While we are disposed to concede to a trial judge wide limits in the suspension or enforcement of the rule in reference to the proper limits of a cross-examination and in respect to the order in which evidence is to be introduced, yet we must reserve to this, as a reviewing tribunal, such authority in respect to even such questions of practice as that any serious injury to the rights of the party complaining of the relaxation of the rule may be corrected by granting a new trial, if necessary. In the instance before us the case turned upon the question as to whether the

plaintiff's injury was due proximately to a defective appliance. Without having asked the witness Forney a single question in respect to this matter, the defendant was permitted to affirmatively show that no such defect existed as that claimed by the plaintiff. A consequence was that, upon this very affirmative evidence, the defendant, at the close of plaintiff's evidence, asked and obtained a direction to find for the defendant in error. This verdict was directed, as is shown by the charge of the court, upon the ground that this positive evidence, delivered by Forney, that the step was not defective, was not so contradicted by the evidence of other witnesses as to make a case for the jury. We are not prepared to say that in this particular instance the suspension of the usual and proper rule in regard to the limits of a cross-examination did not operate to the very serious injury of the plaintiff's case. Certain it is that no reason appears which appealed to the discretion of the trial judge. Inasmuch, however, as the case must be reversed upon other grounds, we reserve the question as to whether the action of the court in this instance would, independent of any other ground, be reversible error.

2. The evidence of the plaintiff's witness Watkins Richards touching the defective condition of a step on the corner of Erie car No. 47,923 was erroneously excluded. The plaintiff's witness William Edwards had already testified that on the morning after the injury to O'Connell he and Watkins Richards had together examined Erie car No. 47,923, and found the step on the northeast corner of the car, as it stood when examined, bent backwards against the sill. Richards was then called. He did not remember the number of the car, and could only identify the car examined as an Erie car in the yards of the defendant company, and the same car which witness and William Edwards had examined together. We think this was enough to permit the witness to testify as to the condition of the car step thus examined. Neither do we think the examination made by Richards was so remote from the time of the accident as to justify its exclusion altogether. The injury had occurred at about 7 p. m. of the previous evening, and this inspection by Edwards and Richards occurred between 8 and 9 the following morning. The time which had elapsed between the injury and this inspection was matter for consideration in respect to the probative effect of the evidence, and was a question for the jury under proper instruction. But the inspection was not so remote as to justify its entire exclusion. The court had already, over objection, admitted the evidence of the witness Edwards, whose inspection was made at the same time; and we cannot think the very cautious trial judge could have rested his ruling upon this question of remoteness, but rather upon the supposed insufficiency of the identification of either the car examined, or of the particular step as the step in question.

3. It follows, from the error in excluding the evidence of the witness, Richards, that the court erred in directing a verdict for the defendant. Independently, however, of the excluded evidence referred to, we think there was a case for the jury. The plaintiff was an employé of a railroad corporation, and claims to have been injured in Ohio by a defective appliance upon a railroad car in use upon the

railroad of the defendant company. His case is, therefore, within the terms of the Ohio statute of April 2, 1890, being now section 3365–21, Bates' Ann. Rev. St. Ohio. This statutory provision so far changes the ordinary rule of evidence in actions governed by the act as to constitute evidence of such a defect and of an injury caused thereby to an employé "prima facie evidence of negligence on the part of such corporation." Felton v. Bullard, 37 C. C. A. 1–4, 94 Fed. 781; Pennsylvania Co. v. McCann, 54 Ohio St. 10, 42 N. E. 768, 31 L. R. A. 651, 56 Am. St. Rep. 695. The proof that plaintiff was an employé, and that he sustained an injury while in the discharge of his duty, carries with it no presumption of negligence on the part of the defendant company, either at common law or under the Ohio act, cited above, although a different rule may prevail as to a passenger. Patton v. Railway Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Railway Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136. Under the Ohio statute it devolves upon a railroad employé suing for an injury due to a defective car, engine, or appliance to show not only an injury, but that it was caused by such a defect. The operation of the statute is at this stage of the case to relieve such employé from the further duty, which at common law would rest upon him, of going on and showing that the company had knowledge of such defect at or before the injury, or, if diligent, ought to have had knowledge. The trial judge, as we learn from his charge, was of opinion that there was no such evidence of a defective step as to justify a jury in finding the plaintiff's injury was proximately caused by such a step. We are not prepared to say that the personal testimony of the plaintiff tended sufficiently to establish a defect in the step he was endeavoring to use when he fell. The learned trial judge regarded his evidence as at most amounting to an opinion or a conjecture based upon facts not constituting more than a bare scintilla, and as not, therefore, constituting that degree of evidence legally justifying a finding that there was a defective step as surmised by the plaintiff. We are not prepared to disagree with the court below in this view of the plaintiff's personal testimony, considered apart from all other evidence circumstantial and direct. "It is not sufficient for the employé to show that the employer may have been guilty of negligence. The evidence must point to the fact that he was. And when the testimony leaves the matter uncertain, and shows that any one of a half dozen things may have brought the injury, for some of which the employé is responsible and for some of which he is not, it is not for the jury to guess between these half dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." Patton v. Railway Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361. But there was very direct evidence that a defective and bent step was found on the morning after the accident upon an Erie ore car standing in the ore yard at Youngstown, and that the car bore the number 47,923; and also evidence tending to show that the plaintiff had fallen from that very car. But it is said that there was no sufficient identification of the step from which plaintiff fell as the defective step found on car No.

118 F.—63

47,923. The position of the car had been in the meantime shifted, and some 13 hours had elapsed between the injury and the examination of the car by the plaintiff's witnesses. Plaintiff tried to climb onto the front car of a string being pushed by an engine. The track on which the train was moving was an east and west track, and the train was being pushed west. The plaintiff stood on the north side, and grabbed the handhold on the front end of the first car that passed him, and attempted to place his foot in the step at the corner of the car. If, therefore, there was a defective step, which proximately contributed to his fall and injury, it must have been the step on the northwest corner of car No. 47,923 as that car stood at the time of his injury. After the accident the car was moved to the ore dump, and then back into the yard, and when examined by the witnesses Edwards and Rosevear was standing on a track running north and south. The defective step testified to by all of these witnesses was the northeast corner step as the car stood on the north and south tracks when the witnesses found it. No other step was defective. There was evidence showing that there were two routes by which the car might have been carried to the ore dump and brought back to the yard. One of these routes was over a track called the "Horn," in which event the car would be completely turned around, and the northwest step would become the southwest step; the other route was around by the office track, in which case the northwest step would be the northeast step,—the very step found injured. The defect in the case made for the plaintiff, it is said, lies in the fact that there was no testimony showing which route had been pursued by this car, and that if, in fact, the route around the "Horn" was pursued, the step nearest plaintiff when he fell would be the southwest and not the northeast step, as the car stood after being so shifted. Now, the ultimate fact to be proved by this plaintiff is that his injury was caused by a defective metal step on the corner of the car which he undertook to ascend. If the jury should believe the statement of the plaintiff himself that he grabbed a handhold on the northwest corner of a car moving west past him, and that his foot failed to secure a standing upon the step at that corner of the car because it struck something which felt like the side bar of a step bent away from him, and not hanging perpendicularly with and below the side sill of the car, it would afford a basis for at least a reasonable conjecture that the step in question was in some way defective. Conceding, however, that this conjecture, standing only upon the slender foundation found in the feeling, surmise, or opinion of the plaintiff, is not in itself such a solid fact as to be a safe basis for a judgment, we are next to inquire whether the fact that upon the next morning one of the steps upon the car in question was found to be in such a defective condition as to invite just such a catastrophe as that which occurred is not in itself a fact pointing to that step as the cause of the accident, all the other steps of that car being in sound condition. It must be admitted, of course, that it is possible that the defective step found the following morning upon the car which plaintiff was climbing might not have been the step near the plaintiff, and that the step he missed was in fact a sound step, and

his slip due to some carelessness of his own in trying to reach it. But this solution is dependent chiefly, if not altogether, upon which route of the two possible routes was in fact taken by the car after the accident in going to and coming from the ore dump. But if the car took the route around by the "Horn," so that the northwest corner of the car at the time of the accident would be the southwest corner after this shifting, it was a fact peculiarly within the knowledge of the defendant company, and a fact which, in the situation of the evidence, they were, in our opinion, called upon to show, for otherwise the conclusion might be reasonably drawn by the jury that the defective step found on the car inspected the next morning was the step nearest the plaintiff the night before.

We have deemed it necessary to present this view of the deductions of fact which may be legally drawn from the evidence actually submitted on the trial, because the evidence of the witness Richards was only corroborative of the testimony admitted from the witnesses Edwards and Rosevear. If the testimony of the witnesses named did not amount to a contradiction of the evidence of the witness Forney that all the steps of car No. 47,923 were sound, and not defective, at 11 or 12 o'clock the night before,—that the northwest step was particularly examined, and found sound,—there was in fact no such conflict as required a submission to the jury. On the other hand, if the jury should believe that the car examined by Edwards and Rosevear was the car examined by Forney, and the step found defective the step nearest plaintiff when injured, there would be a contradiction, unless the other circumstances would justify an assumption that the injury to the step described by the first-named witnesses had occurred after the accident and before those witnesses saw it. This, too, was a question for the jury. Upon the whole case we think there was something more than a bare scintilla of evidence tending to show that plaintiff's injury was caused by the defective step inspected by Edwards, Rosevear, and Richards.

Reverse, and remand for a new trial.