### CHAMBERLAIN v. PENNSYLVANIA R. CO.

### No. 397.

Circuit Court of Appeals, Second Circuit.

June 13, 1932.

SWAN, Circuit Judge, dissenting.

Sol Gelb, of New York City, for appellant.

Burlingham Veeder, Fearey, Clark & Hupper, of New York City (Morton L. Fearey, and C. B. M. O'Kelley, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The deceased was a brakeman employed in interstate commerce, at the time of his death engaged in piloting two gondola cars in the defendant's yard at Morrisville, Pennsylvania, on a misty afternoon, at five o'clock on November third. The operation was of the familiar kind; cars were being assorted by gravity upon tracks in the yard, of which there were a great many. A locomotive pushed a train up an incline, detached the desired number in a string, and let them roll down the other side of the "hump," to be switched to their destination. Each of the strings was ridden by one or more brakemen, whose duty it was to control their speed and prevent collisions. It was conceded that at some point after the deceased's cars had been shunted upon the track where it was to go, he fell from them and was run over by nine cars which followed his own, and which were ridden by three brakemen. He lay between the tracks, and whether his own cars had already also passed over him was not clear. The question is whether he was thrown off through the negligent collision of the following nine, or whether in some unknown way he fell off. In the latter event concededly the case was not proved.

The plaintiff's only witness to the event, one Bainbridge, then employed by the road, stood close to the yardmaster's office, near the "hump." He professed to have paid little attention to what went on, but he did see the deceased riding at the rear of his cars, whose speed when they passed him he

took to be about eight or ten miles. Shortly thereafter a second string passed which was shunted into another track and this was followed by the nine, which, according to the plaintiff's theory, collided with the deceased's. After the nine cars had passed at a somewhat greater speed than the deceased's, Bainbridge paid no more attention to either string for a while, but looked again when the deceased, who was still standing in his place, had passed the switch and onto the assorting track where he was bound. At that time his speed had been checked to about three miles, but the speed of the following nine cars had increased. They were just passing the switch, about four or five cars behind the deceased. Bainbridge looked away again and soon heard what he described as a "loud crash," not however an unusual event in a switching yard. Apparently this did not cause him at once to turn, but he did so shortly thereafter, and saw the two strings together, still moving, and the deceased no longer in sight. Later still his attention was attracted by shouts and he went to the spot and saw the deceased between the rails. Until he left to go to the accident, he had stood fifty feet to the north of the track where the accident happened, and about nine hundred feet from where the body was found.

The story is attacked as too uncertain to support a verdict; and it is quite true that the witness's repeated glances are a suspicious circumstance; there seems to have been no reason for his looking first when the nine cars were entering the switch, and again after a crash which did not of itself seem to him unusual. Moreover his testimony is not too clear in itself; we have stated it in its more favorable interpretation. However, all this was a matter for the jury, and assuming they thought him truthful, they might infer that a collision took place. It does not appear to us impossible, or indeed improbable, that one in his position could tell whether the two strings were together. The intervals between cars in a train are uniform; they may be detected by the straight sides. Certainly a gap of four or five car lengths, when the nine cars came to rest, would have been easily observable; and this was the story of the defendant. What Bainbridge saw, coupled with what he had heard, if uncontradicted, would be enough to support a finding that the nine cars had collided with the deceased's and thrown him off. There is no inherent impossibility in the story.

The defendant's version, backed by six or seven of its employees, was that the deceased had fallen off while clambering over his cars from the rear end. The two gondolas, with nobody aboard, made a light contact with a string still moving ahead of them, whose crew, looking backward, saw him lying on the track. The brakeman on the front of the approaching nine cars saw him between the rails, though not in time to check them until they had passed over, and clear of, him. There was however no contact between the gondolas and the nine, which, as we have just said, stopped some four or five car lengths away. Nobody professed to have seen him fall, but if the defendant's witnesses were believed, he must have done so; at least, however he got upon the track, it was not through a collision, and the defendant was not at fault. On this showing the judge thought the evidence of any collision too speculative to support a verdict and took the case from the jury. We have to decide only whether this ruling was right.

■ Left to ourselves with the bare record we should say that the judge's conclusion was supported by a very strong balance of probability. Not only was the testimony of Bainbridge somewhat suspicious in itself, but its contradiction was so manifold as to leave little doubt. Nevertheless, the question was really as to whom to believe, and when that is so, we do not understand that the jury may be displaced. There are of course cases where the story of one side is impossible because of the physical situation, or because it is incredible by common experience. Southern Ry. Co. v. Walters, 284 U. S. 190, 52 S. Ct. 58, 76 L. Ed. 239, was such a case. Moreover, in such cases the contradicting circumstances may depend upon the testimony of other witnesses, and be conclusive only if this be assumed to be true. A court implicitly so assumes when it directs a verdict because of incredibility of the testimony, not inherent. Perhaps a direction may be proper, when the witnesses are impeached in character, or discredited upon cross-examination, if contradicted by others whose apparent veracity stands. And indeed there may even be cases where numbers alone are enough. A bench of bishops should perhaps prevail over a casual interloper, though the other side does not succeed in discrediting him. It is impossible to set any general rule, for the combinations are infinite.

■ The most that has been said—probably all that can be—is that there comes a point where the evidence no longer justifies any verdict but one. Pleasants v. Fant, 22 Wall. 116, 121, 22 L. Ed. 780; Delk v. St. L. &

San Francisco R. R., 220 U. S. 580, 587, 31 S. Ct. 617, 55 L. Ed. 590; Slocum v. N. Y. Life Ins. Co., 228 U. S. 364, 369, 33 S. Ct. 523, 57 L. Ed. 879; Baltimore & O. R. R. Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169, 69 L. Ed. 419; Gunning v. Cooley, 281 U. S. 91, 94, 50 S. Ct. 231, 74 L. Ed. 720. The jury's exclusive zone can be marked no more definitely than that in which impartial persons may differ. Gardner v. Mich. Cent. R. R., 150 U. S. 349, 360, 14 S. Ct. 140, 37 L. Ed. 1107; Richmond & Dansville R. R. Co. v. Powers, 149 U. S. 43, 45, 13 S. Ct. 748, 37 L. Ed. 642; Texas & P. R. Co. v. Harvey, 228 U. S. 319, 324, 33 S. Ct. 518, 57 L. Ed. 852. It was indeed implied in Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 660, 21 S. Ct. 275, 45 L. Ed. 361, that the judge's estimate of the witnesses drawn from his own observation should be weighed in the scale. Yet if so, it seems impossible to avoid the result that their credibility may be for him, which the books again and again disclaim. Indeed, unless we are to suppose ourselves in the same position as the judge when we pass upon his ruling, we must abdicate any review, except in cases where the bare print leaves no doubt. We understand that the question before us is the same as was before him; anything else makes his the final word.

To a majority of us it appears that the direction in the case at bar cannot stand without intruding upon the exclusive competence of the jury; without taking from them their power to decide who of those appearing before them are entitled to credence. No doubt if the formula is to be strictly applied that the court should intervene when reasonable men cannot differ, such cases may fall within it. If it be an exception, still it seems to us required by the traditional division of function, that the jury alone may choose between a single witness, whose story is neither inherently improbable, nor contradicted by evidence which cannot reasonably be disregarded, and a large number who contradict him, at least when they are in the defendant's employ, and in part concerned in the occurrence.

Judgment reversed.

SWAN, Circuit Judge (dissenting).

I agree that cases are not lightly to be taken from the jury; but, if ever a directed verdict for the defendant in a negligence case is to be sustained, this, in my opinion, is such a case. Unless the nine-car cut of cars bumped into Chamberlain's two-car cut and knocked him off, there was no evidence of negligence by the defendant. Bainbridge did not testify that he saw any such collision, he inferred that it occurred because he heard a crash and because thereafter the two strings appeared to him to be moving together. But the crash might have come from elsewhere in the busy yard, and he was in no position to see whether the two strings of cars were actually together. He repeatedly said he was paying no particular attention, and his position was such, being 900 feet from the place where Chamberlain's body was found and less than 50 feet from the side of the track in question, that he necessarily saw the strings of cars at an acute angle when they appeared to be moving together. At such an angle it would be physically impossible even for an attentive observer to tell whether the forward end of the nine-car cut was actually in contact with the rear end of the two-car cut. All the witnesses who were in a position to see testified that the nine-car cut never did hit Chamberlain's. Plaintiff's evidence was wholly circumstantial, and the inferences which might otherwise have been drawn from it were shown to be utterly erroneous, unless all the defendant's witnesses were willful perjurers. This is not a case where direct testimony to an essential fact is contradicted by direct testimony of other witnesses, though even there it is conceded a directed verdict might be proper in some circumstances. Here, when all the testimony was in, the circumstantial evidence in support of negligence was thought by the trial judge to be so insubstantial and insufficient that it did not justify submission to the jury. Cf. Southern Ry. Co. v. Walters, 284 U. S. 190, 194, 52 S. Ct. 58, 76 L. Ed. ——. His opinion is entitled to "large respect" by an appellate court "when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by instructions to that effect." Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 660, 21 S. Ct. 275, 276, 45 L. Ed. 361. I think the judgment should be affirmed.