JIMMIE BREWER, Plaintiff-Appellant, *v.* NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Appellee.

(No. 70-100;

Fifth District—March 10, 1972.

Chapman, Strawn, Kinder, Talbert & Chapman, of Granite City, (Charles W. Chapman, of counsel,) for appellant.

Pope and Driemeyer, of East St. Louis, (W. Thomas Coghill, Jr., of counsel,) for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff appeals from an order of the trial court of St. Clair County, Illinois allowing defendant's motion for judgment notwithstanding the verdict after a jury verdict in favor of the plaintiff in a case brought to recover damages for personal injuries under the provisions of the Federal Employers Liability Act, 45 U.S.C.A., section 51, *et seq.*

Plaintiff contends that there was sufficient evidence of the defendant's negligence to warrant submitting the case to the jury under the standards established by the U.S. Supreme Court and the courts of review of Illinois.

Plaintiff, a 20-year employee of the defendant, was injured while working as a carman in the rip track area of defendant's railroad yard in Madison, Illinois. There are five sets of tracks in that area running east and west with air lines running alongside the south rail of three of the tracks. The air lines are two inches in diameter and every 50 or 60 feet there are valves to which connections are made for the purpose of operating air powered tools.

Plaintiff testified that he was injured on February 15, 1968, while he was dragging an air hose which was about 15 or 20 feet long with connections on each end of it. He had one end of the air hose in each hand as he was dragging it down to the west end of a car that he had been working on. After reaching the west end of the car, he dropped one end of the line and started across the track and tripped over an air valve. He fell across the rail with his left side hitting the south rail. He intended to raise his foot high enough to step over the valve, but he caught his right foot on it and fell. He had never fallen on a valve before, but had stepped on top of them. The rail was higher than the valve and the end

of the valve was about 20 inches from the rail. He had to take a longer step to get over the rail because of the valve. He explained that workmen got used to the valves being where they were and got used to lifting their feet over the valves which were about eight to 10 inches wide.

■■ The trial court properly instructed the jury that it was the duty of the railroad to use ordinary care to provide plaintiff with a reasonably safe place in which to do his work. I.P.I. 160.08.

In *Bailey v. Central Vermont Ry., Inc.,* 319 U.S. 350, 63 SCt. 1062, Justice Douglas stated that the question of "a safe place to work" was the key issue and one that must go to the jury.

"Sec. 1 of the Act makes the carrier liable in damages for any injury or death 'resulting in whole or in part from the negligence' of any of its 'officers, agents, or employees.' The rights which the Act creates are federal rights protected by federal rather than local rules of law. *In re Second Employers' Liability Cases (Mondow v. New York, N.H. & H.R. Co.),* 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A., N.S., 44; *Seaboard Air Line Ry. v. Horton,* 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A. 1915 C, 1, Ann. Cas. 1915 B, 475; *Chesapeake & Ohio Ry. Co. v. Kuhn,* 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157. And these federal rules have been largely fashioned from the common law (*Seaboard Air Line Ry. v. Horton, supra*) except as Congress has written into the Act different standards. *Tiller v. Atlantic Coast Line R. Co.,* 318 U.S. 54, 63 S.Ct. 444. At common law the duty of the employer to use reasonable care in furnishing his employees a safe place to work was plain. 3 Labatt, Master & Servant (2nd ed.) Sec. 917. That rule is deeply engrained in federal jurisprudence. *Patton v. Texas & P. Ry. Co.,* 179 U.S. 658, 664, 21 S.Ct. 275, 277, 45 L.Ed. 361, and cases cited; *Kreigh v. Westinghouse, C. K. & Co.,* 214 U.S. 249, 256, 257, 29 S.Ct. 619, 621, 622, 53 L.Ed. 984; *Kenmont Coal v. Patton,* 6 Cir., 268, F. 334, 335. As stated by this court in the *Patton* case it is a duty which becomes 'more imperative' as the risk increases. 'Reasonable care becomes, then, a demand of higher supremacy, and yet, in all cases it is a question of the reasonableness of the care, reasonableness depending upon the danger attending the place or the machinery.'

\* \* \*

The nature of the task which Bailey undertook, the hazards which it entailed, the effort which it required, the kind of footing he had, the space in which he could stand, the absence of a guard rail, the height of the bridge above the ground, the fact that the car could have been opened or unloaded near the bridge on level ground—all these were facts and circumstances for the jury to weigh and appraise in determining whether respondent in furnishing Bailey with that par-

ticular place in which to perform the task was negligent. The debatable quality of that issue, the fact that fairminded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury. The jury is the tribunal under our legal system to decide that type of issue (*Tiller v. Atlantic Coast Line R. Co., supra*) as well as issues involving controverted evidence. *Jones v. East Tennessee, V. & G. R. Co.*, 123 U.S. 443, 445, 9 S. Ct. 118, 32 L.Ed. 478, *Washington & G. R. Co. v. McDade*, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235. To withdraw such a question from the jury was to usurp its functions.

\* \* \*

Since the evidence of respondent's negligence in failing to provide Bailey with a safe place to work is sufficient to support the verdict of the jury and the judgment of the trial court, we do not reach the other issues which have been presented by petitioner. Reversed."

See also *Arnold v. Panhandle & S. F. R.R. Co.*, 353 U.S. 360, 1 L.Ed.2d 889, 77 S.Ct. 840.

In *Williams v. New York Central R.R. Co.*, 402 Ill. 494, the court said at 506:

"In actions under the Federal Employers' Liability Act the rule for measuring the sufficiency and amount of evidence necessary to justify the submission of the case to the jury is that established by the Supreme Court of the United States, [cases cited] and it is clear from its recent decisions that the authority of courts to withdraw from the consideration of a jury the question of a defendant railroad company's negligence and its proximate relation to the injury is now very restricted indeed. [Cases cited.]"

In *Eaton v. The Long Island Rail Road Co.* (1968, U.S.C.A., 2d cir.), 398 F.2d 738, the defendant railroad maintained that a judgment against it should be reversed because the plaintiff had failed to introduce evidence of alternative means of arranging certain working conditions. The court rejected the argument, commenting:

"We know of no reason why the jury should not be deemed capable of determining on the basis of 'common experience' \* \* \* whether the railroad acted in a reasonable manner in failing to provide alternative means \* \* \*. The matter does not appear to be highly technical and, if the uninstructed judgment of lay members of the community was likely to prove erroneous because of some subtle reason, the railroad should have (and could have) introduced evidence in support of its view."

Carrying this reasoning further and in a slightly different direction, in *Rouse v. New York Central*, 349 Ill.App. 139, the court pointed out that

the only meaningful test of whether the railroad has fulfilled its duty to provide a safe place to work is not whether or not it complied with some technical rules but whether a dangerous condition, considering the nature of the work performed, was a necessity in the practical operation of the railroad. Here again, the question is not so much a scientific or abstruse one as one that very well can be decided by a jury of laymen.

In *Rogers v. Mo-Pac Railroad Co.*, 352 U.S. 500, 559-562; 1 L.Ed.2d 493, 517, 518; 77 S.Ct. 443, the court said:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on the grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence.

The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence.

The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the simple question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, where there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." (Emphasis added.)

■■ The evidence, though sparse, described a condition consisting of railroad tracks, airlines and valves about which employees were required to work while looking out for moving equipment and other employees. It further described these as being unpainted or otherwise distinguished with the result that all the components blended into a general grayness. Further, evidence established that the arrangement of the valves was not consistent, that they varied in both height above ground level and

position. The fact of the projecting instruments, the fact of their un-distinguished appearance—according to the plaintiff's testimony both the valve over which he fell and the ground were "gray, grayish black, or brown * * * kind of gray * * * oily * * * the color of ground," the fact that when he fell he was moving an air hose to a work location, all add up to a case that presents a question of fact for a jury.

There was sufficient evidence before the jury to raise a question of whether the employer had met his legal obligations to provide a safe place to work for his employees and, specifically, for this plaintiff.

The order of the trial court is reversed with instructions that the jury's verdict in the plaintiff's favor in the amount of $17,000 be reinstated.

Order reversed.

EBERSPACHER and CREBS, JJ., concur.