S. R. JONES ET AL. v. FORT WORTH & DENVER CITY RAILWAY COMPANY.

Decided November 23, 1907.

1.—Railroads—Trespasser—Personal Injuries—Evidence.

In an action by parents against a railroad company for damages for fatal injuries to their minor child while riding upon one of defendant's freight trains, evidence considered, and held insufficient to raise an issue of negligence on the part of the defendant, and hence the trial court properly instructed a verdict for the defendant.

2.—Same—Negligence—Inference.

The mere fact that a trespasser was injured while riding on a railway train will not support an inference that the injury was caused by the negligence of the railway.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*Peter Arnold* and *J. C. Scott,* for appellants.

No brief for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted in one of the District Courts of Tarrant County by appellants for damages sustained in the death of their fifteen-year-old son, Glenn Jones, on December 8, 1904, who, with other boys, was riding on a freight train from the stock yards in North Fort Worth into the city. After alleging a custom or license on the part of appellee's agents and servants in charge of cars to permit boys and men to ride on freight trains when moving to and fro from the railroad yards in the city and North Fort Worth, appellants alleged, as negligence and ground of recovery, that: "The defendant's agents and servants, well knowing that the said boy was inexperienced, ran their said train negligently by jolting and bumping the cars violently, and without warning or protection to this inexperienced boy, by such rough handling of the cars, defendant threw said minor from the cars upon the said railroad track, where he was run over by the cars and mangled, mashed and killed in a cruel and horrible manner." Appellee pleaded the general denial, contributory negligence, and specially, that Glenn Jones was upon the alleged freight train against the rules and regulations of the company. After the introduction of the evidence the court peremptorily charged the jury to return a verdict for the defendant, which was done, and judgment rendered thereon.

The vital question presented on appeal is, whether the evidence raised the issue of negligence on the part of the railway company, and we have concluded that it does not. There was considerable evidence tending to show that the servants and employes of appellee had long continued to disregard the rules of the company forbidding boys and men to ride on freight trains operated between the points already mentioned. There was evidence also that one of the operatives received a small money consideration from the deceased for permission to ride on the train that killed him, so that we may assume that he was not a trespasser, but no person testified that he was present or witnessed the death of Glenn Jones. It appears that the deceased, who was about fifteen years old, together with several other boys from eight to twelve years of age, rode upon the footboard of one of appellee's switch engines to North Forth Worth, where the engine coupled upon a train of cars, and all the boys boarded the train for the return journey; that, when near the journey's end, Glenn Jones in some way not shown by the evidence was run over and killed. Harvey Jackson, one of the boys mentioned, thus testifies: "I was on the same train Glenn Jones was killed on, but not exactly with him when he was killed. It was on the Fort Worth & Denver, between First and Second streets, at dusk, or a little dark. Did not see Glenn fall; didn't see him until next day. I saw him when we went across the river going to the stock yards. . . . On the occasion Glenn got killed we hopped on the

switch engine and went out to the stock yards. The switchmen didn't see us that night. They were on the north end of the engine and we were on the south end. The engine did not stop between Fort Worth and the stock yards. We got out at the crossing, the railroad crossing out there, before the engine got to switching, and we waited there until they came back with a string of cars, and they came back with a big, long string of cars, and we boys got on. Charley and Glenn and I all got on at the same time, same car. . . . We hopped the train some six or eight cars, or probably more, from the engine; got on a lumber car until we got to the outskirts of town, and then we separated; got up here I guess this side of First street, or at First street, and I says, 'All right, fellows, let's get ready now, and get off when we get at Ninth street,' and I turned and went over towards the north end, and Glenn says, 'I am going to this end,' and so Charley followed me, and I went on across the lumber car and went up on top of the box car and sat down, and stayed there until we got to Ninth street. I did not see any of the switchmen during any of that time. The last I saw of this other boy he was following me off of the coal car—I mean Glenn; that was when we separated. When I got off I just supposed he got off there and walked around home in the back way. I don't think anything happened to that train coming in—just an ordinary trip. There might have been something to throw a boy off or something of that kind—a few hard bumps, of course, there could have been. That always happens to freight trains. We fellows knew that those bumps occurred in such trains as that. . . . On several occasions coming in the trains would jerk and bump a good deal; most all freight trains will do that, though." The operatives of the train denied any knowledge of Glenn Jones' presence on the train, and those who testified on the subject testified that at the time the train passed the place where the boy was killed it was just "gradually moving along," going probably five or six miles an hour, and no witness other than Harvey Jackson testified to any circumstance from which an inference of the negligence charged can, with any show of reason, be drawn. As lamentable and distressing as the result was, the evidence leaves us wholly to conjecture just how the death of appellants' son was brought about. It may be that in walking over the coal car he stumbled and fell between the cars, or that in the effort to alight from the train he slipped his hold with a like fall. Or it is possible, of course, that some "jerk" or "bump" of the cars contributed to the result, but if so the evidence fails to show it with any degree of certainty. The mere fact that such jerks often or usually occur fails to show that one in fact did occur at the particular time in question, or, if so, that it was the cause of the fall, or was the result of any degree of negligence in the manner of operating the train. We can not infer negligence from the mere fact of injury. Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 152. To sustain appellants' contention we must first presume a jerk, from the fact proved that trains occasionally do so, and from this presume negligence. In other words, base presumption upon presumption, which the law never permits. In brief, we find no reasonable hypothesis raised by the evidence that would have authorized the submission of the case to the jury, and hence conclude that the court properly gave the peremptory

instruction assigned as error. See Texas & Pac. Ry. Co. v. Shoe-maker, 98 Texas, 451.

Several other questions are raised by the assignments, but in view of the foregoing conclusions they are entirely immaterial, and the judgment is accordingly affirmed.

*Affirmed.*