### BENSON v. ABERCROMBIE et al.

#### No. 9735.

Court of Civil Appeals of Texas. Galveston.
May 13, 1932.

Barkley & Webb, of Houston, for plaintiff in error.

Fouts, Amerman, Patterson & Moore, of Houston, for defendants in error.

LANE, J.

A. C. Benson was the inventor of a certain improvement in a clutch for hoisting drums to be used on and in connection with drilling rigs, for which an application for patent had been made. On the 10th day of May, 1928, Benson assigned his interest in such invention to J. S. Abercrombie, who executed and delivered to Benson an agreement wherein it is recited as follows: "Now, therefore, in con-

sideration of the conveyance by said Arthur C. Benson to me of said invention, and in further consideration of one dollar, the receipt of which is hereby acknowledged, I, James S. Abercrombie, do hereby sell, assign and convey unto the said Arthur C. Benson an undivided one-half interest in and to the profits which may be made by me through the exploitation of said invention, whether by manufacture, sale, license, rental, or otherwise, said profits to be paid to said Arthur C. Benson without further application on his part."

In a short time after Benson had made the assignment to Abercrombie the Cameron Iron Works, a corporation, under the supervision of Benson, built a drilling rig for the J. S. Abercrombie Company, a corporation, to which was attached the drum hoisting device, invented by Benson, which had been sold to J. S. Abercrombie. J. S. Abercrombie was president and general manager of both of said corporations, and owned a majority of the stock of each of them. J. S. Abercrombie Company bought several rigs, all that it used, from the Cameron Iron Works. The Iron Works Company made such rigs for the Abercrombie Company under the supervision of Benson. Such rigs were used by the Abercrombie Company in drilling several wells for oil, and, in the prosecution of such drilling a quantity of oil of considerable value was produced.

A. C. Benson brought this suit against J. S. Abercrombie and J. S. Abercrombie Company to recover one-half of the profits made by Abercrombie Company out of oil produced by use of its rigs to which the device invented by Benson was attached.

The substance and material parts of the plaintiff's petition, which covers ten pages of the transcript, is as follows:

He alleged the execution of the assignment of his invention to J. S. Abercrombie, and the assignment to him of one-half undivided interest in the profits which might be made by J. S. Abercrombie through the exploitation of the device invented by Benson, whether by manufacture, sale, license, rental, or otherwise. He alleged that J. S. Abercrombie in making the contract with him made the same for himself and for J. S. Abercrombie Company; that from the use of such device the defendants had made profits to the extent of $80,000 which they had appropriated exclusively to their own use, to plaintiff's damage in one-half of such sum. He alleged that the J. S. Abercrombie Company, with full knowledge of the contract between him and J. S. Abercrombie, furnished the money for the building of the rig to which his invention was attached; that it used such rigs in its business, and accounted to plaintiff for profits made until it began operations in the state of Louisiana; and that by reason of such facts the Abercrombie Company was estopped to deny that it was obligated to pay him one-half of the profits made from the use of his invention.

In the alternative plaintiff alleged that the defendant corporation having full knowledge of the contract, and making use of the invention, and J. S. Abercrombie in permitting the corporation to use the device without requiring the corporation to account to plaintiff for the profits, amounted to legal fraud upon plaintiff. Pleading further in the alternative, plaintiff alleges: "That if it should be determined that the contract was not made for and on behalf of the corporation then there was an agreement between Abercrombie, the individual, and the corporation to secure control of the device and exploit it for their own use and benefit. Abercrombie, the individual, would report that he would pay plaintiff half of the profits realized from the use of the invention, and at the same time had an understanding with the corporation by which he would turn the invention over to the corporation for exploitation, and claim that the corporation and not himself had made the profits, and in that manner defraud plaintiff out of his portion of the profits realized in the use of said invention."

The defendant Abercrombie individually answered by general demurrer, special exceptions, and general denial, and alleged:

That the clutch, or the invention of itself, was of no value and could not be used except in connection with the making up of a complete gasoline drilling rig, and that there were other inventions which could have been purchased on the open market, and that the plaintiff had nothing to do with the gasoline drilling rig.

That the plaintiff co-operated with the Cameron Iron Works in assembling the first rigs, and that said rigs were sold by the Cameron Iron Works to said J. S. Abercrombie Company, and that the plaintiff accepted employment with the J. S. Abercrombie Company to operate the rig, with the understanding that he would be paid a salary and one-half of the profits, and that a settlement had been made with him on such basis. He denied that he himself had realized any profit out of the exploitation of the invention.

The defendant J. S. Abercrombie Company answered by general demurrer, special exceptions, and general denial, and by specially alleging that it bought from the Cameron Iron Works of Houston, Tex., certain gasoline rigs, built to include the clutch described in plaintiff's petition, with the full knowledge of the plaintiff; that it employed such rigs in its business; that such clutch is only a small part of such rigs; that such rigs include the machinery for drilling and handling shallow wells.

It further alleged that prior to April 30, 1929, Benson was in the employ of the company; that under his contract of hire it was

agreed, among other things, that Benson was to operate one of the rigs of defendant into which the clutch was built, and that, in addition to his salary, he was to be paid one-half of the profits derived from said operation, whether the same was attributable to the clutch device or not, and that no claim of any sort was ever made by Benson during his employment that he was looking to the company for a share of the profits made by virtue of the use of the clutch device, or that he was expecting any other compensation than that arising from his contract of employment.

It specially denied that it owed Benson anything for the use of the rigs containing the clutch device, all of which it had bought and paid for from the Cameron Iron Works; and it alleged that A. C. Benson and this defendant came to a full settlement of all amounts claimed by Benson by virtue of any operation or dealing with defendant company; that he was paid by crediting his account with all items claimed by him, and after so doing he was left in debt to defendant in the sum of $162.32. It denied that by the use of the rigs with the clutch attached it had made a profit, but alleged to the contrary that the operation of the rigs had in the main caused a loss. It adopted the answer of its codefendant, J. S. Abercrombie, as far as its allegations are pertinent to defendant's defense.

The cause was tried before a jury, and, at the close of the evidence introduced by the plaintiff, defendants offering none, the court withdrew the case from the jury, and on motion of defendants rendered a judgment for the defendants.

Upon request therefor, the court filed its findings of fact and conclusions of law.

He found, first, that the clutch invented by Benson was a part only of a drilling rig, the greater parts of which were available to the public; second, that there was no proof offered to show that the contract entered into between J. S. Abercrombie and Benson was made for the use or benefit of the Abercrombie Company, or that there was any agreement or device used by J. S. Abercrombie and the Abercrombie Company to get control of Benson's invention; third, that it was admitted by Benson that a complete drilling rig could be assembled and operated by the use of other clutches than that invented by him, and that his clutch was only a small part of the assembly; and, fourth, that there was no proof offered showing that any portion of the profits were attributable to the use of the clutch itself.

Conclusions of law were as follows: "The Court concludes from an examination of the instruments sued upon by the plaintiff that it was not contemplated by the terms thereof that the plaintiff was to receive any share of the profits that might be earned by the operation of rigs containing the clutch, and that the language of the contracts themselves excluded such theory of profits, the language specifically limiting the profits to such as might be derived by manufacture, sale, license or rental to persons or users other than A. C. Benson and J. S. Abercrombie; and that the doctrine of ejusdem generis excluded the kind of profits alleged by plaintiff even had he proved any; and that such being the case and no proper basis for profits being disclosed by the evidence, a peremptory instruction was proper and that the jury should have been discharged and judgment entered for both the defendants, and the same was accordingly done."

On appeal A. C. Benson contends that the court erred in withdrawing the case from the jury and rendering judgment for defendants, insisting that the evidence presents issues of fact which should have been submitted and passed upon by the jury under appropriate instructions.

We overrule appellant's contention. The finding of facts of the court are supported by the undisputed evidence. It is undisputed that there are other gasoline rigs on the market operating without plaintiff's device, that this clutch is a small part of the equipment going to make up a gasoline drilling rig, and that the tractor, machinery, derrick, etc., would cost many times the cost of the small clutch in the drum, and that Benson had nothing to do with this larger assembly and could claim profits on the clutch only. Other clutches would operate a gasoline rig independent of the Benson clutch.

The evidence shows that the Cameron Iron Works built several machines and sold them to the J. S. Abercrombie Company.

Plaintiff's entire case is based upon the proposition that his contract with J. S. Abercrombie to pay him a share of the profits which might be made through the exploitation of his invention, whether by manufacture, sale, license, rental, or otherwise, entitles him to recover one-half of the entire profits of the J. S. Abercrombie Company in the drilling and production of oil by the use of any gasoline drilling rig upon which the small clutch part was used, regardless of the company's capital and resources involved in the entire enterprise. The court found that no portion of the company's profits on the drilling operations was attributable to the use of the clutch itself. That finding is not assailed in this appeal in any way. It was undisputed that the J. S. Abercrombie Company bought and paid for every rig it used, and the clutch was a small part of each assembly, and that there are several gasoline rigs on the market operating without Benson's clutch, and that the gasoline rigs of the J. S. Abercrombie Company could be easily operat-

ed without using his clutch. Benson did not claim a patent on a "gasoline rig," but only on a certain kind of clutch on a gasoline rig; the balance of the rig had to be furnished by some one else and cost around $11,000. He did not know how much his clutch cost. He testified: "Q. In other words, the drum is a small part of the assembly as far as cost goes? A. Small part, but very essential part."

Benson admitted that his clutch was built into the drilling rig by the Cameron Iron Works at his direction, and sold to the J. S. Abercrombie Company. This ends the matter as to the J. S. Abercrombie Company. As to J. S. Abercrombie, the plaintiff must show that some sort of profit could be attributed to the clutch apart from the "gasoline rigs," with which he had nothing at all to do. Failing in this, he might allege a fair rental or royalty value for each clutch used by J. S. Abercrombie in his experimental work with this clutch.

We agree with the contention expressed by counsel for appellees that to say that Benson was entitled to one-half of all the profits from the entire business in which the rigs were used in which the clutches were mounted for experimental purposes, with Benson's consent, would dignify an absurdity.

█ If a judgment rendered upon a withdrawal of the case from the jury can be upheld on any supported theory, it must be affirmed on appeal. Parmer County v. Smith (Tex. Civ. App.) 47 S.W.(2d) 883.

Having reached the conclusion that the court did not err in withdrawing the case from the jury and in rendering judgment for the defendants, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.