## MAUK v. TEXAS PIPE LINE CO.
### No. 13335.

Court of Civil Appeals of Texas. Fort Worth.

April 10, 1936.

Rehearing Denied May 8, 1936.

R. J. Cantrell and H. B. Sanders, both of Dallas, for appellant.

H. S. Garrett and H. R. Wilson, both of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

A. P. Mauk is the owner of a tract of 100 acres of land in Dallas county. Across the west side of that tract the Texas Pipe Line Company owns and maintains two oil pipe lines, running parallel and about 2 to 4 feet apart, and the west pipe line is about 10 to 12 feet from the west boundary of the tract, which is also the east boundary of a public highway. The highway is crossed by two ravines, both of which enter the 100-acre tract on the west boundary line and converge into one ravine near the south boundary of the tract. Both ravines are crossed by the two pipe lines. In the southwest corner of the tract two water cisterns were dug adjacent to the south ravine, one on the south side and the other on the north side. Those cisterns were made by blasting out the rock, and water therefrom was used for water-

ing stock and household purposes by the occupants of the improvements. About 7 acres in the southwest corner of the tract, which included the two ravines, were fenced off and used for pasturage purposes. The remainder was used for agricultural purposes. The cistern on the south side of the ravine became filled with mud and its use was abandoned. But the one on the north side continued in use.

Mauk instituted this suit against the pipe line company to recover damages alleged to have been caused by a contamination of the water in the cistern from oil alleged to have escaped from the two pipe lines.

It was alleged that plaintiff had been the owner of the land since January 24, 1908, and that on the 10th day of October, 1921, he executed to the defendant pipe line company a certain contract of easement; and—

"That said instrument granted and conveyed to this defendant right to lay, operate and maintain a pipe line for the transportation of oil or gas over and through the plaintiff's land above described, and contained the following specific provisions:

" 'And by the acceptance hereof, the grantee agrees to bury such pipe lines so that they will not interfere with the cultivation of the land, and also to pay any and all damages to crops, fences and land, which may be suffered from the construction, operation or maintenance of such pipe lines;'

"That said instrument provided for the laying of two pipe lines by the defendant company, if such should be desired, and the two pipe lines were actually laid by the defendant company at dates not long after the execution of said easement, the exact dates being unknown to this plaintiff, but being well known to the defendant; that thereafter, and the dates likewise unknown to this plaintiff, but well known to the defendant, the latter began the transportation of oil in and through said pipe lines, running through the plaintiff's land above described."

It was further alleged that the pipe lines when originally laid were entirely under the surface of the ground, but since the original construction portions thereof have been and are now exposed to the surface; that the ravines are fed from the rainfall and springs, and the subsurface is of limestone construction, having crevices and cracks therein.

It was further alleged:

"That some time prior to said August, 1931, at a time unknown to this plaintiff, but first discovered by him in August, 1931, and the damage therefrom first resulting to this plaintiff subsequent to said August 1931 and prior to the filing of this suit, the said oil leaked, or escaped from the pipe line, or lines, of the defendant corporation on to plaintiff's premises, that the leaking or escaping of the oil from defendant's pipe lines, on to plaintiff's premises was known to the defendant, its agents and employees, or could have become known by the use of ordinary care, and that permitting such oil to leak or escape from such line, or lines, constituted, and was, negligence upon the part of the defendant, its agents and employees.

"Plaintiff further shows that as a direct and proximate result of the negligence aforesaid of the defendant corporation, its agents and employees, plaintiff has suffered damage in the sum of $10,000, in that as a direct and proximate result of the leaks discovered by the plaintiff in August, 1931, and resulting in damage subsequent thereto, the premises of plaintiff aforesaid do not have any reasonable market value whatsoever at this time, and did not have any market value whatsoever immediately after the infliction of the damages above alleged, whereas immediately prior thereto the premises of the plaintiff had a reasonable market value of $100 per acre; that such damages have been, and will be, permanent in their nature so far as the effect upon the market value of the plaintiff's premises are concerned, in that the well and water supply to said premises have been destroyed and cannot be replaced."

In the alternative, plaintiff alleged that his tenants had removed from the premises on account of the contamination of the water in the cistern from the oil, resulting in his loss of rentals.

There was a further prayer for exemplary damages in the sum of $2,500 for the defendant's failure to remedy the defects in its pipe lines which caused the leakage of oil therefrom, after the discovery of the new leak, or leaks, and the damages therefrom in August, 1931, and prior to the filing of this suit after plaintiff had notified the defendant of such leakage.

Plaintiff's original petition was filed July 28, 1933, and the case was tried upon his

fourth amended original petition, filed January 15, 1935.

Defendant filed an answer to the amended petition, embodying a general demurrer, numerous special exceptions, a general denial, and a special plea, alleging that plaintiff's alleged cause of action was barred by the two years' statute of limitation. Article 5526, Rev.Civ.Statutes.

The case was tried before a jury, and at the conclusion of the evidence offered by plaintiff, the court sustained the defendant's motion for an instructed verdict in its favor. A verdict was returned in accordance with that instruction, and the plaintiff has appealed from the judgment rendered upon that verdict.

Four assignments of error are presented, the substance of which is that plaintiff's pleadings were sufficient as a basis for recovery of the damages sought; that the evidence introduced would warrant findings that oil had leaked out of defendant's pipe lines and had caused the damage complained of; and that plaintiff had sustained the damages as the result of such leakage of oil in the amount alleged in his petition; and further that defendant had stopped prior leakage from the pipe lines upon plaintiff's complaint thereof, which action constituted an admission that those leaks had existed.

Appellant's briefs contain no assignment of error presenting the contention that the evidence introduced was sufficient to sustain a finding by the jury that in the construction and maintenance of the pipe lines the defendant was guilty of negligence, which was the proximate cause of the leakage of the oil therefrom and the damage sued for.

The statement of facts, showing all the evidence introduced upon the trial, is in the record here and covers some 152 pages; and in appellant's briefs some 52 pages are devoted to a recital of the evidence therefrom.

Appellant invokes the familiar rule announced in numerous decisions, such as Sigmond Rothchild Co. v. Moore (Tex. Com.App.) 37 S.W.(2d) 121, 122, that "the trial court is not justified in giving a peremptory instruction unless the evidence is so conclusive that reasonable minds cannot differ thereon." And in appellant's briefs there is a summary of the testimony relied on to support the assignment to the action of the court in instructing a verdict for defendant as follows: Testimony of plaintiff that on a former occasion he had complained to the defendant of the leakage of oil from the pipe lines and that Mr. Colligan, defendant's representative, came out and stated to him that he had found the leak and had stopped it, and that there should be no more oil to bother him; also, the testimony of several witnesses that they had discovered oil in the water in the cistern on different occasions, one of whom testified to the death of some cattle that drank the water from the cistern, and another that the water used in the making of bread affected its taste; of another, to the value of the work done by plaintiff in repairing the cistern to keep out oil therefrom; of another as to the depreciation in the market value of the land if it is not supplied with water; and the testimony of the witness J. F. Case that defendant's employees came out to work on the leaks in the pipe lines and burned the oil that had accumulated in the ravine near the cistern.

Plaintiff testified that the south cistern had been filled with mud and had not been in use for six or seven years, and he claimed no damages with respect to that one. He further testified that the other cistern was about 100 feet east of the west boundary line of the tract and that it had been constructed before he bought the land, and that it consisted of an excavation made from blasting the rock in the edge of the ravine to a depth of a few feet below its bed. He further testified that the subsurface of the land in the edge of the ravine was of shaley formation of rock, and that the cistern was curbed. He further testified to the presence of springs on his land, and that he had seen water seeping into the bed of the ravine from its banks, but that he had never seen oil leaking from the pipe lines.

In Lone Star Gas Co. v. Hutton, 58 S. W.(2d) 19, 21, opinion by Judge Sharp of the Commission of Appeals, this was said:

"The trial court found that Hutton and wife did on September 21, 1928, for a consideration of $43.75, execute, grant, and convey a right of way and easement to the Lone Star Gas Company for the purpose of constructing, maintaining, and operating pipe lines and appurtenances thereto, including telegraph and telephone lines, over and across 300 acres of land, more or less, and that the gas company buried its pipe line to a sufficient depth so as not to interfere with the cultivation of the soil,

and that the gas company obligated itself to pay any damages that might arise to growing crops and fences on the land by reason of the construction, operation, and maintenance of its pipe lines; that the consideration recited in the deed was in full 'satisfaction of every right thereby granted.

"The conveyance to the gas company expressly provided that it should have certain rights in and upon certain lands belonging to Hutton and his wife, and the gas company had the right of ingress and egress over and upon the lands for the purpose of exercising the rights given therein. The gas company, under the terms of the conveyance, had a legal right to locate, construct, maintain, and operate such lines across the land, and it is to be presumed that the grantors assented to bear all loss and take all profits which incidentally resulted from the exercise of those rights in a proper manner. If grantee exercised the rights conferred in the conveyance with due care and without negligence, then no damages were recoverable. Houston & E. T. Ry. Co. v. Adams, 58 Tex. 476; Mexican National Construction Co. v. Meddlegge, 75 Tex. 634, 13 S.W. 257; Gulf Pipe Line Co. v. Watson (Tex.Civ.App.) 8 S.W.(2d) 957; Texas Pipe Line Co. v. Higgs (Tex. Civ.App.) 243 S.W. 633.

"To hold in the face of the provisions contained in the deed that the gas company was not permitted to enjoy those privileges free from damages necessarily incident to the enjoyment of those rights, and permit the assessment of damages not due to the result of negligence or care on its part, would be a violation of its legal rights. The burden rested upon Hutton and wife to allege and prove that the gas company was guilty of negligence in this respect."

■ It is also a familiar rule that negligence must be proved, and it cannot be inferred merely from the fact that injury has occurred. Jones v. Ft. Worth & D. C. R. Co., 47 Tex.Civ.App. 596, 105 S.W. 1007; International & G. N. R. Co. v. Wilson (Tex.Civ.App.) 129 S.W. 849; Williams v. Williams, 188 N.C. 728, 125 S.E. 482.

In Davis v. Castile (Tex.Com.App.) 257 S.W. 870, 872, it is said: "The plaintiff cannot make a prima facie case without proof of the acts of negligence alleged, and that such negligence was the proximate cause of the accident."

See, also, Gulf, C. & S. F. R. Co. v. Davis (Tex.Civ.App.) 161 S.W. 932.

Appellee invokes those decisions in support of its contention that in the absence of an assignment of error by appellant, presenting the contention that the evidence was sufficient to support a finding of negligence on the part of the defendant in permitting the alleged leakage of oil from its pipe lines, he is in no position to complain of the judgment in the first instance, under the doctrine announced in the following cases:

"In order to justify a reversal, it must appear from the assigned issues or upon the face of the record that under no theory of the case was the court warranted in directing a verdict." Schuyler v. Lacy (Tex.Civ.App.) 79 S.W.(2d) 901, 902.

"If a judgment rendered upon a withdrawal of the case from the jury can be upheld on any supported theory, it must be affirmed on appeal." Benson v. Abercrombie (Tex.Civ.App.) 51 S.W.(2d) 431, 434.

"In the absence of an assignment of error, and in the absence of error apparent of record, the Court of Civil Appeals has no authority to reverse the judgment of the trial court." Blackmon v. Trail (Tex. Com.App.) 12 S.W.(2d) 967, 968.

See, also, Cox v. Rio Grande Valley Telephone Co. (Tex.Civ.App.) 13 S.W. (2d) 918.

Appellant also calls attention to the following testimony of the plaintiff: That not so much oil is seeping out from the banks of the ravine now as in August, 1931; that the seepage was more noticeable in July or August, 1933; he did not know whether or not defendant has done any work on the lines to stop the leakage recently, but some such work was done and the leakage stopped many years prior to August, 1931, upon his complaint to defendant of leakage; and that at present water is being used from the cistern as it had always been used prior to the present time. Plaintiff further testified that only one of defendant's two pipe lines on his land was constructed since he executed the easement contract of date October 10, 1921, alleged in plaintiff's petition, and that the other pipe line was constructed many years prior thereto under a former easement contract. And further that defendant has constructed and maintained a third pipe line on another man's land on the

west edge of the county road adjacent to plaintiff's tract, which also crossed the same ravines that crossed plaintiff's tract and at a point further upstream. He further testified that he had never seen oil escaping from either of defendant's pipe lines on his land, and that no oil had ever leaked into and damaged his tract for agricultural and pasturage purposes.

■ Plaintiff's suit was for damages caused from leakage of oil from the pipe lines constructed under his grant to the defendant of the easement of date October 10, 1921, and therefore his claim for damages was limited to leakage from the one line which he testified was the only one laid under that easement. Under his pleading he could not recover for leakage from the line laid under a former easement, under the elementary rule that the allegata and probata must correspond. All the testimony introduced by him was as to leakage of oil from the two pipe lines across his land considered together, with nothing to show how much from either of those lines, separately from the other, and aside from the probability of leakage from the third pipe line on the land of another and crossing the same ravines. In the absence of evidence on that point, if the case had been submitted to a jury, any finding by them of damages from leakage of oil from the pipe line laid under the easement of date October 10, 1921, necessarily would have been based on a mere surmise or guess, which it would have been the duty of the trial court to set aside for that reason.

■ And it is well settled that under such circumstances it was the duty of the court to instruct a verdict in favor of the defendant, as announced in numerous decisions, such as Garrett v. Hunt (Tex.Com.App.) 283 S.W. 489; Radley v. Knepfly, 104 Tex. 130, 135 S.W. 111; Washington v. Missouri, K. & T. R. Co. (Tex.Civ.App.) 36 S.W. 778; First National Bank of Greenville v. First State Bank of Campbell (Tex. Civ.App.) 252 S.W. 1089; 26 R.C.L. p. 1079; Pleasants v. Fant, 22 Wall. (89 U.S.) 116, 22 L.Ed. 780; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Seybold v. Johnson (Tex.Civ.App.) 11 S.W.(2d) 399; Robertson v. Magnolia Pet. Co. (Tex.Civ.App.) 255 S.W. 223; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Patton v. Texas & P. R. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361; Scott Mfg. Co. v. Millis (Tex.Civ.App.) 67 S.W.(2d) 885.

■ And under the facts recited we believe it clear that there is no proper basis for application of the rule of res ipsa loquitur to show the negligence alleged and upon which he relied for recovery. Davis v. Castile (Tex.Com.App.) 257 S.W. 870, and authorities there cited; Patton v. Texas & P. R. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361.

■ For such lack of sufficient definiteness of proof of the source of the leakage of oil complained of, the judgment of the trial court will be affirmed, independently of the lack of any assignment of error presenting the contention that the evidence introduced was sufficient, prima facie, to sustain a finding by the jury that the leakage of oil complained of resulted from defendant's alleged negligence.

Affirmed.